# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1942
Filed July 22, 2026

————————————

**In re the Marriage of Kaitlyn King and Logan King**

Upon the Petition of
**Kaitlyn King,**
Petitioner–Appellee,

And Concerning
**Logan King,**
Respondent–Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Stacy Ritchie, Judge.

————————————

**AFFIRMED AS MODIFIED AND REMANDED**

————————————

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West
Des Moines, attorney for appellant.

Donna R. Miller of Miller & Evans PLC, Des Moines, attorney for appellee.

————————————

Considered without oral argument
by Tabor, C.J., Chicchelly, J., and Bower, S.J.
Opinion by Bower, S.J.

1

**BOWER, Senior Judge.**

Logan King appeals the district court's order granting Kaitlyn King's petition to modify physical care of their three children. Upon our review, we affirm the physical-care order and remand to the district court to determine the fees of the child and family reporter and fix the same as court costs.

## I.       Background Facts and Proceedings

Logan and Kaitlyn married in 2017 and divorced in 2024, at which time the district court adopted their stipulation to have joint legal custody of their three children, born in 2014, 2019, and 2021, and placed the children in Kaitlyn's physical care. The parties agreed to a parenting schedule providing parenting time to Logan on weekdays between approximately 7:00 a.m. and 3:00 p.m. and every other weekend. Logan works from 3:30 p.m. to 12:00 a.m. as a correctional officer at the Polk County Jail.

Approximately six months after the dissolution decree was entered, Kaitlyn petitioned for modification, alleging a substantial change in circumstances due to her plan to enroll in a Ph.D. program at the University of Iowa, which would necessitate her relocating from the Des Moines area. Kaitlyn stated she "intends to move within a 30-mile radius of Marion, Iowa, which is within an hour drive to the University of Iowa," and further, she "wants to get the parties' children integrated into a smaller town and school district with a lower cost of living, which is financially beneficial to [her] while she is attending college." Logan resisted Kaitlyn's petition and counterclaimed to have the children placed in his physical care.

The district court appointed a child and family reporter (CFR), who filed a report with the court. The report opined "both Kaitlyn and Logan are good parents and well-intentioned," "but being equally good isn't enough to

meet the high burden of proving that one can provide superior care." The CFR noted concerns about the "workability" of too many transitions between the parties' homes long-term and opined the children "are more emotionally bonded to Kaitlyn." The CFR noted "quite a few reports of physical discipline and verbal altercations between Logan and the children" but was not provided "direct evidence confirming said incidents." The CFR recommended "Kaitlyn continue to be awarded primary physical care of the minor children."

Following a hearing in July 2025, the district court found a significant change in circumstances existed due to Kaitlyn's plan to move to eastern Iowa, Kaitlyn was the parent able to provide superior care, and it was in the children's best interests to remain in Kaitlyn's physical care. Logan appeals.

## II. Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity," and we review de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted).

## III. Modification of Physical Care

The first question is whether there has been a material and substantial change in circumstances since the January 2024 decree to modify the custody provision. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). As the parent seeking modification, Kaitlyn bears a "heavy burden" of proving "conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to

make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The new circumstances must affect the children's welfare and "be more or less permanent." *Id*. And they "must not have been contemplated by the court when the decree was entered." *Id*.

Kaitlyn testified she filed the modification petition so she could attend a Ph.D. program at the University of Iowa. Kaitlyn explained how the program would coincide with her other degrees and work experience. Kaitlyn acknowledged her first application was declined, but she had since made changes to her role at her job to improve her chances of being accepted in 2026. The CFR researched whether "alternate programming [was] available for her that would maybe preclude her from needing to move—and from what [the CFR] found, that's the only program that's available in the state." The CFR also noted Kaitlyn had changed to a new position at work to get more "hands-on experience in that particular field," which the application team at the University of Iowa instructed her to do "to increase her likelihood of being successful in applying again in the future."

We also note the parents' agreed preference for the children to be in a smaller community and a smaller school system—a goal Kaitlyn's planned move would further. Kaitlyn discussed several towns and school districts she had researched, which were in the range of 130 to 160 miles from the Des Moines area. *See* Iowa Code § 598.21D (2024) (allowing the district court discretion to decide whether a move exceeding 150 miles qualifies as a substantial change in circumstances); *In re Marriage of Lydolph*, No. 20-0679, 2021 WL 2453050, at *3 (Iowa Ct. App. June 16, 2021) (noting "section 598.21D is permissive" and finding a move approximately seventy-five miles away triggered a substantial change with an existing shared-physical-care arrangement). The fact Kaitlyn had not yet moved does not affect our analysis

4

of this issue.[1] *See In re Marriage of Russo-Montes*, No. 06-1162, 2006 WL 3802157, at *3 (Iowa Ct. App. Dec. 28, 2006) (finding the father's pending move out of state "would be a significant and material change in circumstances"); *In re Marriage of Gallmeyer*, No. 01-1774, 2002 WL 536044, at *3 (Iowa Ct. App. Apr. 10, 2002) (finding substantial change based in part on the mother's "announce[ment] she was moving"); *Hardie v. St. Germain*, No. 07-0076, 2007 WL 2257087, at *1 (Iowa Ct. App. Aug. 8, 2007) (noting the mother's "planned move to Arizona" constituted a substantial change of circumstances). We concur with the district court's conclusion Kaitlyn carried her burden of proof in establishing a material and significant change of circumstances based on her plan to move to eastern Iowa.

Logan claims Kaitlyn failed to show she was better able to parent the children or the change from the current physical-care arrangement was in the children's best interests. "Even if a change in circumstances is material and substantial, a modification of physical care must be in the children's best interests." *In re Marriage of Gunson*, No. 24-1597, 2025 WL 1323722, at *2 (Iowa Ct. App. May 7, 2025). "The parent requesting physical care must show they are better able to minister effectively to the well-being of the children." *Id.* (cleaned up). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Logan claims Kaitlyn does not support his relationship with the children and the move to eastern Iowa will disrupt the children's daily contact

---

[1] Logan notes "Kaitlyn's only substantial change is based on her hope to be accepted into the University of Iowa Ph.D. program." But he also acknowledges Kaitlyn's "intent to relocate" is enough to prove a material and significant change in circumstances.

with him, extended family, school, friends, and their community. To the contrary, the record shows Kaitlyn values and fosters Logan's relationship with the children.[2] The record also shows Kaitlyn has provided most of the care for the children, including maintaining their day-to-day routines, helping with schoolwork, and scheduling appointments. With children "at the critical ages of development, keeping them close to their primary caregiver is the least emotionally disruptive to the children." *Lydolph*, 2021 WL 2453050, at *4 (cleaned up) (observing although the children's relocation would "require adjustments," greater weight is given to the emotional and environmental stability each parent can provide "over the stability of the children's physical surroundings").

Logan has also maintained a close relationship with the children. And both Logan and Kaitlyn have been involved in extracurricular activities. Logan's work schedule has been consistent over the years and has allowed him to have time with the children during the day. However, the children are now school age. Logan has applied for a different shift, 7:30 a.m. to 3:30 p.m., and he testified he is "currently third on the list for the opportunity to work those hours." When that happens, Logan will have more time to be involved with the children's activities after school if he chooses to do so. *Id*. (noting the distance of the mother's new residence "is not so great that the children cannot maintain a close relationship with [the father], extended family members, and friends").

---

[2] Logan points to a video Kaitlyn posted on social media, during which she raises her middle finger and a caption states, "To my ex's family, you wanna stare? Know that I'm way better off, I'm thriving. Keep watching." Kaitlyn acknowledges the video "may not have been appropriate," but she explains it was prompted by her frustration of being "cyber stalked" by Logan's brother. Logan agreed he talked to his brother about cyber stalking and told him to stop.

Under these facts and circumstances, we agree with the district court. The children's best interests are served by relocating with Kaitlyn to eastern Iowa. We affirm the court's order on physical care.

## IV.    Child and Family Reporter Fees

Logan challenges the court's order requiring him to "be responsible for any remaining CFR fees" and to "reimburse Kaitlyn for any fees or costs she has paid to the CFR." Logan claims the CFR fees should have been apportioned in the same manner as court costs.

The district court appointed the CFR pursuant to Iowa Code section 598.12B. Section 598.12B(3) authorizes the taxation of fees and disbursements associated with a "child custody investigator or child and family reporter . . . against the party responsible for court costs." Here, the district court ordered "[t]he parties shall equally split the court costs." The CFR's fees should have been assessed equally against the parties as court costs. *See In re Marriage of Peterson-Bayer*, No. 08-1695, 2009 WL 1492717, at *5 (Iowa Ct. App. May 29, 2009) (remanding for the district court to determine the fees of the custody evaluator where the custody evaluator's fee "should have been fixed as court costs"); *In re Marriage of Pontier*, No. 18-1027, 2019 WL 5790868, at *3 (Iowa Ct. App. Nov. 6, 2019) (affirming order for ex-husband to pay the custody evaluator's fee where he "was taxed with court costs").

## V.    Appellate Attorney Fees

Both parties request appellate attorney fees.[3] "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In

---

[3] Neither party provided an attorney fee affidavit.

determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (cleaned up); *accord* Iowa Code § 598.36 ("In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court."). We also consider "whether the party was required to defend the district court's decision on appeal." *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Considering these factors, we decline to award appellate attorney fees to either party. Costs are divided equally between the parties.

## CONCLUSION

We affirm the physical-care order as set forth in the modification decree. We remand to the district court to determine the CFR fees and fix the same as court costs. We decline to award appellate attorney fees to either party.

**AFFIRMED AS MODIFIED AND REMANDED.**